FREEMAN MANLEY, Respondent, *v.* NEW YORK TELEPHONE COMPANY, Appellant.

Argued May 23, 1951; decided July 11, 1951.

*Patrick J. Tierney* and *Irving W. Young* for appellant. I. Plaintiff failed to prove any facts which would have justified a jury in concluding that plaintiff suffered an electric shock from contact with defendant's telephone. (*Braun* v. *Buffalo Gen. Elec. Co.,* 200 N. Y. 484; *Wilks* v. *New York Tel. Co.,* 243 N. Y. 351; *Robertson* v. *Rockland Light & Power Co.,* 187 App. Div. 720; *Ruppert* v. *Brooklyn Heights R. R. Co.,* 154 N. Y. 90; *Paolantonio* v. *Long Island R. R. Co.,* 274 App. Div. 1063, 300 N. Y. 640; *Ward* v. *Iroquois Gas Corp.,* 233 App. Div. 127; *Messing* v. *State of New York,* 197 Misc. 907; *Lane* v. *City of Buffalo,* 232 App. Div. 334.) II. Plaintiff failed to prove any negligent act of commission or omission by direct proof, inference or circumstance, and to have submitted the case to a jury would have been to permit a verdict based on guesswork, surmise and conjecture. (*Lahr* v. *Tirrill,* 274 N. Y. 112; *Messing* v. *State of New York,* 197 Misc. 907; *Lane* v. *City of Buffalo,* 232 App. Div. 334; *Ruppert* v. *Brooklyn Heights R. R. Co.,* 154 N. Y. 90.) III. The doctrine of *res ipsa loquitur* has no application. (*Galbraith* v. *Busch,* 267 N. Y. 230; *Griffen* v. *Manice,* 166 N. Y. 188; *Sandler* v. *Garrison,* 249 N. Y. 236; *George Foltis, Inc.,* v. *City of New York,* 287 N. Y. 108; *Paolantonio* v. *Long Island R. R. Co.,* 274 App. Div. 1063, 300 N. Y. 640.) IV. No evidence has been introduced to establish by direct proof, inference or circumstance, that plaintiff's stroke was caused by the use of the telephone. (*Matter of Sherman* v. *Orwasher,* 229 App. Div. 39; *Matter of Metz* v. *Gallagher,* 223 App. Div. 548; *Meiselman* v. *Crown Heights Hosp.,* 285 N. Y. 389; *Shaw* v. *Tague,* 257 N. Y. 193; *Reid* v. *Westchester Lighting Co.,* 236 N. Y. 322.)

*F. Walter Bliss, John S. Hall* and *Robert H. Ecker* for respondent. I. The rule of *res ipsa loquitur* applies to this case and the trial court erred in granting a nonsuit. (*Plumb* v. *Richmond Light & R. R. Co.,* 233 N. Y. 285; *George Foltis, Inc.,* v. *City of New York,* 287 N. Y. 108; *Bressler* v. *New York R. T. Corp.,* 270 N. Y. 409; *Robinson* v. *Consolidated Gas Co.,* 194 N. Y. 37; *Griffen* v. *Manice,* 166 N. Y. 188; *Breen* v. *New York Central & H. R. R. R. Co.,* 109 N. Y. 297; *Volkmar* v. *Manhattan Ry. Co.,* 134 N. Y. 418; *Wilks* v. *New York Tel. Co.,* 243 N. Y. 351; *Delahunt* v. *United Tel. & Tel. Co.,* 215 Pa. 341.) II. Plaintiff's proof of the accident, the surrounding circumstances, and his injuries were sufficient to invoke the operation of the rule of *res ipsa loquitur.* (*Rosenberg* v. *Schwartz,* 260 N. Y. 162; *Betzag* v. *Gulf Oil Corp.,* 298 N. Y. 358; *Dillon* v. *Rockaway Beach Hosp. & Dispensary,* 284 N. Y. 176.)

FROESSEL, J. In this action to recover damages for a paralysis of his right side, plaintiff alleged in his complaint that while removing a telephone receiver in Schroon Lake, New York, he '' received a violent charge of electricity which knocked [him] down on the floor '' as the result of defendant's negligence. In his bill of particulars, he charged that a circuit in the city of Glens Falls connecting with the Schroon Lake telephone line was improperly wired, and was in close proximity to a power line, and poorly insulated. His counsel in his opening statement asserted he would show that while plaintiff at Schroon Lake spoke over the telephone to his employer in a restaurant at Glens Falls at the time of the occurrence complained of, '' both of them were knocked unconscious by an electric shock ''. No such proof was adduced at the trial; his employer was not even called as a witness.

In an effort to support his claim, plaintiff, sixty-five years old, testified that he was employed by one Clarence Seeley on his farm at Schroon Lake, and prior to the occurrence complained of was engaged in the cutting of logs in the woods. At about 9:00 P.M. on February 16, 1949 — a '' nice '', '' clear '' and '' quite cold '' evening — the telephone in his employer's residence rang. It was an old-fashioned crank type instrument that hung on the wall. The following sequence of events then ensued: (1) plaintiff removed the receiver from the hook; (2) bells '' jingled '' as

if someone on the line were calling; (3) he said, "Hello"; (4) he heard someone say "Hello", and (5) recognized that it was his employer's voice. At least throughout this brief period nothing untoward happened and the telephone did him no harm. Then, he said, "I got knocked out. I took the receiver down and said, 'Hello.' That's all I know. I was knocked out." There is not a scintilla of evidence as to what "knocked" him out. There was no proof of any loud or cracking noise, of any damage to the diaphragm of the telephone receiver or earpiece or any other part of the instrument, or any flash or flame or flaring of electricity around the telephone or of any burns on plaintiff's body, as in many of the cases cited by plaintiff. Indeed, there was no evidence whatever of any burn or mark on, or unusual sensation in, plaintiff's ear or hand, which were in contact with the telephone, nor of any damage to his clothing.

After he regained consciousness, his employer's wife, Mrs. Seeley, returned to the house, helped him to a chair, where he sat for an hour or two; he then went to bed, remaining there for three days. In describing his feelings following this occurrence, he said: "Well, my right side, arm, leg, prickled — felt just like your foot being asleep, no use of it. * * * Well, as I say, I felt just as though my side was all afire, prickled. * * * My right side."

He did not try to resume his customary work for the first two or three months, and then felt "weak", "all in", and had "dizzy spells." More than fifteen months after the accident and about ten days before the trial, he testified that while raking leaves, he had the same sensation as he did following the so-called accident: "I was all in. My whole side was all afire, prickled, just like electric shock." He does not claim that this was an electric shock. He never consulted a physician in relation to the occurrence complained of until a few days before trial, obviously in preparation therefor. He did, however, see doctors on two occasions meanwhile, but for other ailments — lameness and gangrene of the foot; he did not tell them about this accident — "not a bit." He never reported the accident to defendant, and did not commence this action until a year later.

Mrs. Seeley, his only other lay witness, added very little to his testimony. She returned to the house at about 9:15 P.M.,

and found plaintiff on the floor trying to get up; he could not talk coherently; he " wasn't himself " but was " unconscious ". The telephone was a local battery installation on a party line of eleven instruments, any of which could be called without using the central switchboard simply by ringing the proper signal. She further stated: " the telephone rang practically all day, because there are so many people on our line "; and she herself had used it shortly before six o'clock that very evening. After she discovered plaintiff, she noticed the telephone receiver hanging but did not replace it until the next morning, after plaintiff told her what happened. The telephone line was used that following day; she heard it ring several times. She never notified defendant of plaintiff's accident.

Plaintiff's remaining witness was a doctor who never treated him, but merely examined him a few days before the trial. He testified: " The findings were really of two phases, I felt. One was based, I believe, on direct trauma. He had complained of pain in the right shoulder and pain in the right knee, and those, I felt, were * * * based on direct trauma." X-rays were negative, but on palpation he found pain and tenderness over the right shoulder, with restriction. " The other findings were, I believe, based on a neurologic basis * * * and I believe those are based on some injury or some accident that may have occurred in the brain. I believe that this patient had a stroke * * * he showed residual signs of a right hemiplegia or a right side stroke." The entire right half of the body was affected.

No hypothetical questions were asked of the doctor to show that an electric shock at the time in question was in his opinion the competent producing cause of the paralytic stroke or the alleged shoulder injury; nor was there any evidence to relate the stroke to any electric shock sustained over the telephone. Indeed, his whole testimony was vague, he gave no opinion based on reasonable certainty, and at best predicated his " findings " upon such statements as " I felt " and " I believe ".

At the close of plaintiff's case, the trial court dismissed his complaint. The majority of the Appellate Division reversed, stating in its opinion that the rule of *res ipsa loquitur* applied, that the "equivocal medical proof in the record " would sup-

port an inference "that the physician was of opinion that part of the plaintiff's condition was due to trauma and shock"; it was conceded that "no one in terms has testified that he did [receive an electric shock], either directly or as an informed opinion", but the thought was expressed that a jury might nevertheless decide that he had, as an ordinary result "of what has become a common natural phenomenon." (277 App. Div. 601, 603.)

With this conclusion we cannot agree, for we find no evidence in the record which would justify a jury in determining that plaintiff suffered an electric shock or other injury from contact with defendant's telephone, resulting in paralysis of his right side. By his complaint and bill of particulars, plaintiff unmistakably informed defendant that he would offer direct proof of negligence; this he utterly failed to do, and he now relies on the doctrine of *res ipsa loquitur*.

We have observed in other cases, what is common knowledge, that the telephone, unlike many other electrically operated instruments, does not ordinarily carry a current of sufficient voltage to be dangerous or to cause serious shock or injury to one who comes in contact with it (*Braun* v. *Buffalo Gen. Elec. Co.*, 200 N. Y. 484, 488; *Wilks* v. *New York Tel. Co.*, 243 N. Y. 351, 356). This record may be searched in vain for any evidence, direct or circumstantial, to establish prima facie that the telephone in question carried a high voltage of electricity, or that plaintiff received an electric shock or any other injury as the result of contact with said instrument. Although it is clear that plaintiff had an experience while using the telephone, we have no way of inferring short of sheer speculation what that experience was. He never once said he felt an *electric shock*. All the surrounding circumstances point the other way. What he did say was that he answered the telephone, which was then apparently functioning properly, for he had time to exchange greetings with Mr. Seeley and to recognize his voice; it was after this exchange of greetings, he stated, that he "got knocked out" and that is all he knew. He produced no other proof. As a layman he is not in a position to express an opinion as to what caused his paralysis, neither is a jury, nor are we.

His doctor's failure to relate the paralytic stroke to any alleged electric shock at a telephone has already been adverted to, and the absence of competent medical proof alone would be sufficient to defeat plaintiff's claim. (*Schlesinger* v. *New York Tel. Co.*, 296 N. Y. 537; *Reid* v. *Westchester Lighting Co.*, 236 N. Y. 322, 324; *Ruback* v. *McCleary, Wallin & Crouse*, 220 N. Y. 188, 195.)

In a *res ipsa* case, as in any other, the plaintiff must establish first and foremost the nature of the instrumentality which is alleged to have caused the injury — here, " a violent charge of electricity " — and its identity with the defendant (*Paolantonio* v. *Long Island R. R. Co.*, 300 N. Y. 640; *Galbraith* v. *Busch*, 267 N. Y. 230). While the actual sequence of events may be established by inference (see, e.g., *Betzag* v. *Gulf Oil Corp.*, 298 N. Y. 358; *Bressler* v. *New York R. T. Corp.*, 270 N. Y. 409, 277 N. Y. 200; *Ingersoll* v. *Liberty Bank of Buffalo*, 278 N. Y. 1), the circumstances must be such as to indicate negligence, and there must be more than mere speculation, guess or surmise (*Lahr* v. *Tirrill*, 274 N. Y. 112, 117; *Digelormo* v. *Weil*, 260 N. Y. 192, 199; *Ingersoll* v. *Liberty Bank of Buffalo*, supra, p. 7; *Ruback* v. *McCleary, Wallin & Crouse, supra*). The defendant is not an insurer (*Storm* v. *New York Tel. Co.*, 270 N. Y. 103), and the mere fact that an accident has happened and that injury followed does not give rise to a presumption of negligence on the part of the one charged (*Eaton* v. *New York Central & H. R. R. R. Co.*, 195 N. Y. 267). The maxim may be invoked only where the " ' circumstances of the case unexplained justify the inference of negligence ' ", otherwise there is no inference which a defendant is called on to rebut or explain (*Galbraith* v. *Busch, supra*, p. 233). Whether the rule of *res ipsa loquitur* is to be applied depends upon " whether, upon ' a common-sense appraisal of the probative value ' of the circumstantial evidence, measured in part by the test of whether it is the best evidence available, inference of negligence is justified " (*George Foltis, Inc.*, v. *City of New York*, 287 N. Y. 108, 115).

Moreover, if the evidence, such as there is, is capable of an interpretation equally consistent with the presence or absence of a wrongful act, that meaning must be ascribed which accords

with its absence (*Lahr* v. *Tirrill, supra; Galbraith* v. *Busch, supra; Digelormo* v. *Weil, supra; Ruppert* v. *Brooklyn Heights R. R. Co.,* 154 N. Y. 90). As we said in the last-cited case (p. 94): "In order to prove a fact by circumstances there should be positive proof of the facts from which the inference or conclusion is to be drawn. The circumstances themselves must be shown and not left to rest in conjecture, and when shown it must appear that the inference sought is the only one which can fairly and reasonably be drawn from these facts. (*People* v. *Harris,* 136 N. Y. 429.)"

Applying the foregoing tests to this record, giving plaintiff the benefit of every favorable inference which can reasonably be drawn from the evidence, and recognizing that he was not required to negative the existence of *remote* possibilities that the injury was not caused by defendant or that defendant was not negligent (*Betzag* v. *Gulf Oil Corp., supra,* pp. 364–365), we conclude that plaintiff failed to adduce evidence from which it might be reasonably inferred that he suffered an electric shock from any excessive current on defendant's telephone, or that his injury and present disability are related to his experience of February 16, 1949. He therefore failed to make out a prima facie case as against defendant, and the trial court properly dismissed his complaint.

The order of the Appellate Division should be reversed and the judgment of Trial Term affirmed, with costs in this court and in the Appellate Division.

DESMOND, J. (dissenting). We must, of course, take plaintiff's testimony as true, for our present purposes.

He took down the receiver of a telephone instrument which defendant owned and operated, and which it was obligated to maintain and keep in safe repair. Immediately he was " knocked out ", and later felt various pains and weaknesses. He did not say that a powerful wave of electricity knocked him out, but if he had, that would have been his mere conclusion. He did not say it was an *electric* shock — how could he? What he said, in various forms of inartistic but clear expression, was that his picking up of the receiver was followed, instantaneously, by his being " knocked out ", that is, knocked unconscious.

That was, as I see it, a complete basis for application of *res ipsa loquitur*.

Neither his failure to consult a physician, nor the inconclusiveness of the testimony of the physician-expert-witness who testified for him, destroyed the prima facie case, any more than did the dubiousness, if such it was, of plaintiff's own version of the occurrence. He did testify that he was knocked unconscious, under circumstances which, at the very least, authorized an inference that the cause of the trauma was something wrong with defendant's telephone instrument or lines. We could not hold, as matter of law, that such a thing was incredible or impossible. That was for defendant to prove, if provable. Apparently such things have happened before (see *Hanaman* v. *New York Tel. Co.*, 278 App. Div. 875; *Delahunt* v. *United Tel. & Tel. Co.*, 215 Pa. 241).

The order should be affirmed, with costs, and judgment absolute ordered against defendant, on the stipulation.

LEWIS, CONWAY and FULD, JJ., concur with FROESSEL, JJ.; DESMOND, J., dissents in opinion in which LOUGHRAN, Ch. J., and DYE, J., concur.

Order reversed, etc.