**Petition of CENTRAL R. CO. OF NEW JERSEY.**

**Petition of BALTIMORE & O. R. CO.**

**THE C. R. R. NO. 357.**

**THE PARKERSBURG.**

United States District Court
S. D. New York.
June 2, 1954.

**814**

Vincent E. McGowan, New York City, for petitioner Central R. Co. of New Jersey.

Bigham, Englar, Jones & Houston, New York City, for petitioner Baltimore & O. R. Co., Andrew J. McElhinney, New York City, Donald M. Waesche, Hackensack, N. J., of counsel.

Cusack, McLaughlin and O'Rourke, Brooklyn, for claimant, John J. Robinson, New York City, of counsel.

McGOHEY, District Judge.

In a proceeding by the Central Railroad Company of New Jersey, as owner of the barge "C.R.R. No. 357", and by the Baltimore and Ohio Railroad Company, as owner of the barge "Parkersburg," also called Barge "No. 126," for exoneration from or limitation of liability, Angelina Ausili, as next of kin and administratrix of the effects of Arthur Ausili, has filed an answer and claim for damages for injuries contributing to the wrongful death of her intestate, allegedly caused by the negligence of petitioners in maintaining said barges.

On the trial, claimant consented to the Central Railroad Company's petition for exoneration from liability.

On March 31, 1948, Arthur Ausili was employed as assistant Harbor Master by A. Pellegrino & Sons, Inc., a stevedoring company. He and another Harbor Master, Fiore J. Bianchi, were on the tug Diamond S. No. 2, owned by Sound and Harbor Towing Co., engaged in shifting lighters to facilitate the loading of the S.S. Telemon, owned by the Royal Netherlands S.S. Lines. It became necessary to shift the barge Parkersburg (or 126) from the south side of Pier 12, Brooklyn to alongside The Telemon on the north side of the same pier. For this purpose Bianchi and Ausili boarded the barge 126 from the tug Diamond S. No. 2. The tug made its port side fast to the barge's starboard side and began the shift. The slip between Piers 11 and 12 was crowded. The Telemon was on the north side of Pier 12 with two craft abreast of her. The scows No. 44 inshore and J. M. Waldie were each made fast port side to the south side of Pier 11. Made up to No. 44's starboard was the Jersey Central barge No. 357. It was intended to tie The 126 astern of The 357 port side to the starboard side of The J. M. Waldie. There was not sufficient room for the tug and The 126 abreast and the tug dropped back to the stern of The 126 and pushed her into her berth.

During this operation Bianchi was on the port bow of the 126 and Ausili on the after port side near the after door. About the time the barge was in position, Bianchi heard a scream and looking aft saw that Ausili was wedged, from the waist down, between the barge No. 126 and The J. M. Waldie. Bianchi rushed to his aid as did a deckhand from the tug Diamond S. No. 2. The tug captain put the nose of the tug between the two barges to force them apart and Ausili was lifted by Bianchi and the deckhand, first onto the scow, and then onto the bow of the tug, where he remained until taken by ambulance to the Long Island College Hospital, where he died a few hours later.

Bianchi testified that the wire lifelines on the Barge No. 126 were slack, that the rope lifelines across the door openings were likewise slack, and that the catwalk between the housing and edge of the barge was only 12½ inches wide. He further testified that he himself had used the catwalk on at least two occasions, apparently without any difficulty. That the lifelines were slack is controverted by the barge captain, who testified that he had made his usual inspection that day and that the ropes

and lines were as tight as they could be; by the tug captain who said that when he was up close to the barge the lines appeared to be taut; by the marine supervisor of the B. & O.; as well as by Bianchi's long silence on this matter. Bianchi admitted that, although he had given a signed statement concerning the accident within a few days of the occurrence and had discussed the accident with Mrs. Ausili, he had never mentioned the slack lifelines to anyone until the morning of the trial because no one had asked him about them.

The theory of claimant is that petitioner owed Ausili a reasonably safe place to work, with reasonably safe appliances, and that if these were not furnished (1) the ship was unseaworthy and there can be no limitation, and (2) there was negligence to which the owners were privy and there can be no limitation; or (3) there was negligence and even though the owner was not privy there can be only limitation but not exoneration; and finally (4) only if there is no negligence and no unseaworthy condition can the owners be exonerated. The claimant contends that there was no barge captain on board at the time of the accident and that this rendered the barge unseaworthy and constituted negligent conduct on the part of the petitioner.

 The cause of Ausili's fall is unexplained. There were no eyewitnesses, nor did either side offer any testimony as to why or how Ausili fell. Yet claimant would have it that since he fell and was not pushed, drunk, or inclined to suicide, the B. & O. must be liable, evidently on some theory analogous to res ipsa loquitur. Of course, the inferences permitted under the res ipsa loquitur doctrine do not go so far. It is not enough to show that an accident occurred to make out a prima facie case. It must at least be shown that the instrumentality causing the injury was in control of the person charged, and that the circumstances are such as to indicate negligence.[1] Here numerous explanations suggest themselves as to why Ausili fell. He may have fainted, or carelessly slipped or clumsily missed his footing. There is no claim that there was any obstruction on the catwalk which would have caused him to fall. Even if the lines were slack I think claimant has not borne the burden [2] of showing that an unseaworthy or negligent condition caused or contributed to Ausili's death.

Moreover petitioner here has come forward with evidence to rebut any presumption, by showing that the lines were not slack. The weight of the credible evidence from at least two disinterested witnesses is that they were not. Only the testimony of Bianchi, a confused and, from my observation, unreliable witness, supports claimant's contention. Therefore I find on all the evidence that the barge was seaworthy in respect of the lifelines and ropes, and that there is no showing of negligence in this regard.

 Further in regard to the presence of the captain on board the barge, even Bianchi does not state that he was not there, but only that he did not see him. As against this is the positive testimony of the barge captain himself, and the captain of the tug that the barge captain was on board at the time and even helped lift Ausili to the tug. In this respect also, I find that the barge was seaworthy and that there was no negligence either on the part of the captain of the barge, who I find was on board, or the petitioner.

 Since claimant has failed to show any liability, I hold that petitioner B. & O. is entitled to exoneration from liability as prayed for in the petition.

The Court's findings of fact and conclusions of law sufficiently appear in the opinion.

Submit decree.

1. Manley v. New York Telephone Co., 303 N.Y. 18, 100 N.E.2d 113.

2. The 84-H, 2 Cir., 1923, 296 F. 427, certiorari denied 264 U.S. 596, 44 S.Ct. 454, 68 L.Ed. 867; The Josie B., D.C.S.D.N.Y. 1950, 92 F.Supp. 694.