George T. COLLINS, Plaintiff,

v.

AMERICAN EXPORT LINES, Inc., Defendant.

United States District Court
S. D. New York.

Feb. 21, 1958.

Lawrence P. Ashley, New York City, for plaintiff.

Haight, Gardner, Poor & Havens, New York City, Kenneth Gardner, M. E. DeOrchis, New York City, of counsel, for defendant.

CONGER, District Judge.

Action under Jones Act (46 U.S.C.A. § 688) by plaintiff to recover damages for personal injuries which he alleges occurred on or about the 15th day of August, 1954, while he was a member of the crew of the S.S. Constitution, owned and operated by defendant. The case was tried to the jury, who returned a verdict of $2,500 in favor of plaintiff. Defendant had moved for dismissal of plaintiff's complaint and for a directed verdict at the end of plaintiff's case. It also moved for the same relief at the close of all the evidence. I reserved decision on the said motions.

After the jury returned its verdict, defendant moved under Rule 50, F.R.Civ. P., 28 U.S.C.A., to set aside the verdict and for a judgment n.o.v., or, in the alternative, for a new trial on the ground that the verdict returned by the jury was clearly contrary to all the evidence, that there was no competent evidence at all upon which the jury could have found that the accident in question was the proximate cause of the herniated disc claimed by plaintiff.

I reserved decision on that motion to permit the attorneys to submit briefs.

Serious issues were raised at the trial (1) whether there was any negligence on the part of defendant, and (2) whether or not plaintiff's claimed injury was caused and brought about by said negligence. I am assuming, for the purpose of passing on these motions, that the negligence of defendant was proved. The jury so found and I believe there were sufficient facts upon which they could arrive at such a conclusion.

Plaintiff's testimony was that on the day in question he, with another sailor, was taking part in a fire drill while the vessel was tied up to its dock in New York Harbor and that he was in a lifeboat that was being lowered to the level of the main deck; that the lifeboat was stationary at one time and to keep the lifeboat close to the side of the vessel a frapping line was used. Plaintiff's testimony was that for some unknown reason the lifeboat started to go up at one end, putting a strain on the frapping line, which eventually parted. This caused the lifeboat to swing away from the vessel and away from plaintiff, who was suspended in midair, and as a result he fell and twisted around, grabbed the side of the lifeboat and pulled himself back into it. Thereafter he got to the deck of the vessel. That is a brief statement of plaintiff's claim as to what occurred on the day he was injured.

The real issue in the case at all times was and is whether there was any causal connection between the accident as testified to by plaintiff and the injuries claimed by him to have resulted from such accident. His claim at the trial was that he received an injury to his back which eventually was diagnosed as a rupture of an intervertebral disc in his spine. The facts most favorable to plaintiff as testified to and claimed to have been proved by him in this respect are as follows:

When he got to the deck of the vessel after the accident he sat on the deck and found that on one of his ankles there were abrasions and his ankle was bleeding a little; he saw the doctor on board, told him what had happened and was given treatment consisting of iodine and liniment for his ankles and feet. At that time he knew of no other injury. He went to work the next day and thereafter for the rest of the voyage. His ankle gave him no further trouble.

He stated that about two weeks later he began to have pain in his hip. He thought this was about the last part of August, 1954. He saw the doctor on the vessel, who gave him some pills; at that time he made no complaint to the doctor of any accident. Plaintiff apparently continued his work, which was that of a lookout and required no heavy lifting or handling of lines. He said the doctor aboard the ship told him to see a doctor

when he got to New York, but plaintiff apparently continued working on the Constitution until just before Christmas, 1954, when he signed off and went to the United States Public Health Service as an outpatient. He was treated as an outpatient for about a month and finally was sent to the U. S. Marine Hospital at Staten Island, where he remained for about a month as an inpatient. The final diagnosis given at the hospital was "herniated nucleus pulposus, left", and his condition marked "Improved".

Plaintiff relies, of course, upon the nature of the accident, the subsequent pain at least two weeks after the accident, and the records of the U. S. Public Health Service. There is nothing else in plaintiff's case, as I see it, which in any way connects his subsequent condition, discovered some time in February, 1955, with this accident. Plaintiff produced no medical evidence of any kind except the hospital records, and these hospital records relate only to the condition found either in December, 1954 or January and February, 1955.

Plaintiff does place reliance, however, upon defendant's medical testimony, and claims that this testimony supplied the causal connection. I place little reliance upon this. All that the doctor who testified for defendant said, as my notes indicate, was that trauma or a violent twisting of the back *could* cause a herniated disc. Dr. Michele, an orthopedic surgeon, examined plaintiff on May 23, 1956, on behalf of the defendant. He stated that a herniated disc could occur from many causes; that it was a product of degeneration. He did say, as I stated above, that the accident *could* cause a herniated disc. That is all he did say. He gave no opinion that it was so caused or probably was so caused, nor was he asked a hypothetical question upon which he might base an opinion.

At the end of plaintiff's case I reserved decision on defendant's motions because, frankly, I felt at the time that plaintiff had failed to make out a case.

I feel more strongly now. There are other facts which should be considered.

In the first place, while plaintiff alleges in his complaint that the accident happened on or about August 15, 1954, on cross examination he stated that he was unable to say just when it did take place. He finally did say it might have happened some time in July. As a matter of fact, there was testimony on the part of the captain of the vessel that the vessel was in New York several times in August 1954 and that fire drills were held each time the vessel was in port, but that at no time during August 1954 were any of the lifeboats lowered from the deck or moved in any way. The log book of the vessel, introduced in evidence indicated that when the vessel was at its pier in New York in August no lifeboats were lowered during fire drills whereas, on April 20, 1954, during such a fire drill, lifeboats were lowered. There was also offered in evidence defendant's physical examination report of plaintiff, which contains an entry that on this same date, April 20, 1954, plaintiff was treated for contusion on his left ankle, but there was no record of any injury to plaintiff in July or August, 1954.

There should also be considered the fact that at the time of the accident plaintiff claimed to have felt no pain in his back or hip or leg; that he apparently continued to work without complaint; that about two weeks later, while he was at home in his bed, he suddenly felt pain in his hip; before that he had never had any pain in his back, his hips, or his legs; on that morning he reported aboard the vessel as it was sailing that day, saw the ship's doctor, told him nothing of the accident, but told him of the pain, which spread from his hip to his thigh, to his calf, and then to his foot, and that he had a numbness in his left leg.

At no time from the date of the accident down to and including his treatment at the U. S. Marine Hospital did he give a history to anyone of any accident previously happening to him. The history record at the hospital does contain the

statement in connection with the history given by plaintiff:

"Pt. knows of no trauma or injury prior. No history of similar difficulty previously."

And again on February 7, 1955, when he was admitted to the hospital as an inpatient, the history record contains the following:

"He gave a history of apparently spontaneous onset of stiffness and discomfort in the left lower extremity in August 1954."

Dr. Michele, who examined plaintiff at the request of defendant on May 23, 1956, said that he had examined the records of the Marine Hospital. He stated that his examination revealed that the plaintiff had bad posture, mild tenderness in the sacro-iliac area, no atrophy, normal rotation of spine, normal reflexes, no sciatic nerve tension; he had subjective complaints of the back. The doctor stated that the plaintiff was treated at the hospital for a condition which may or may not have been caused by trauma. He did state, as I have heretofore indicated, that the accident could cause a herniated disc, but that such an accident would be accompanied by pain which would manifest itself within an outside limit of 12 to 24 hours.

On cross examination he testified that two weeks was too long a period of time between the injury and the onset of pain for a herniated disc condition to be related to this accident; that it could happen just by bending over in one's home; that it could be related to the accident only if there was pain within 24 hours.

There was no contradiction of this medical testimony. Plaintiff produced none.

Plaintiff contends that the claim of causation may be established by medical evidence, lay testimony, sequence of events, inferences, all deductions from the circumstances, or a combination of other media. This may very well be true. Not every case requires medical testimony to prove causal relation. As a matter of fact, I charged the jury on this question, and I think correctly, when I told them:

"Now, as I say, causal connection may be shown by facts and circumstances which in the light of ordinary experience reasonably suggests that the defendant's negligence, in the manner charged, operated proximately to produce the injury.

\* \* \* \* \* \*

"The causal connection between the defendant's negligence and plaintiff's injury need not necessarily be proved by expert witnesses. Medical testimony is not necessary to prove the causal connection where the connection is apparent from the injury and the circumstances attending it. I am not intimating that that is the case here. That is for you to determine, from the evidence in the case. You may not guess, you may not surmise or you may not speculate."

I might illustrate this. Strange as it may seem, within a week I tried another case in which the plaintiff produced no medical testimony other than a hospital record. But there the facts and circumstances fell within the above quoted language of my charge. In that case a woman fell on an allegedly slippery floor and broke her upper arm near the shoulder joint. She was immediately picked up, taken to a hospital, where X-rays were taken, the fracture discovered and the patient kept in the hospital for a period of time and then returned to her home. She sued on the theory that the defendant was negligent in maintaining, in a public place, a floor in a dangerous and slippery condition, in consequence of which she received this injury. Of course there no medical testimony was necessary to prove causal relation.

Here I feel the circumstances are not such that one might fairly infer that the accident caused the injury to plaintiff's back.

The theory advanced on the part of plaintiff is that he "made out a prima facie case by showing the circumstances which established a reasonable connec-

tion between the trauma and violent twisting of his back at the time he fell over onto the side of the life boat and the subsequent serious back injuries ultimately defined by medical authority. The causal connection was therefore established prima facie in this case."

I cannot agree with this theory. It might very well apply to one who fell and broke an arm or leg or to one who was struck in the face and within hours had two black eyes. There from the circumstances one could very well infer that the trauma caused the injury.

It is further contended by plaintiff that the " 'herniated disc' was prima facie, proved by the admission into evidence of the certified copy of the hospital record from the United States Public Health Service." True, a diagnosis was made at the United States Marine Hospital some time in February, 1955 that plaintiff had a herniated disc. But nothing in the hospital record connects this condition in any way with the accident.

■ Plaintiff had the burden of proof, as I charged the jury,

"That the plaintiff suffered damage by reason of the accident and the amount and extent of such damage."

I charged that that was one of the elements of plaintiff's case that he must prove by a fair preponderance of the credible evidence. I feel that he has not done so.

■ It seems to me that from the state of facts here one can only connect the accident with the injury by conjecture and guesswork, not even probability. The most favorable inference one might indulge in here is that the accident *might have* or could have caused this claimed injury. That is not sufficient and does not meet the burden of proof imposed on plaintiff.

■ This is peculiarly the type of injury which, it seems to me, requires medical testimony. I might very well paraphrase and apply to this case the statement in Manley v. New York Telephone Company, 303 N.Y. 18, at page 24, 100 N.E.2d 113, at page 115, that as a layman plaintiff was not in a position to express an opinion as to what caused his injury to his back, *i.e.*, the herniated disc, neither was the jury.

Plaintiff has cited a number of cases which apparently go a long way in showing liberality on the part of courts on this question of causal relation. Most of them, however, are compensation cases. The rule in these compensation cases, however, was set forth in Crowell v. Benson, 285 U.S. 22, at page 43, 52 S.Ct. 285, at page 289, 76 L.Ed. 598:

"In conducting investigations and hearings, the deputy commissioner is not bound by common law or statutory rules of evidence, or by technical or formal rules of procedure, except as the act provides, but he is to proceed in such manner 'as to best ascertain the rights of the parties.' "

Referring specifically to causal relationship in the application of the Workmen's Compensation Act of Rhode Island, the Supreme Court of that state said, in Valente v. Bourne Mills, 77 R.I. 274, 75 A.2d 191, at page 194:

"The application of so strict a rule to establish the required causal relationship in the field of law, where the ultimate objective is the attainment of substantial justice according to the remedial purposes and provisions of the act, would cast an unfair burden upon a person injured by accident."

This principle has not been extended to Jones Act cases, so far as I have been able to find.

I feel that plaintiff has failed to make out a case.

I therefore grant defendant's motion.

Defendant is entitled to judgment dismissing plaintiff's complaint and I direct judgment in favor of the defendant. See Manley v. New York Telephone Company, supra.