LILLIAN BRAUN, Individually and as Administratrix of the Estate of EDWARD BRAUN, Deceased, et al., Appellants, *v.* CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Respondent, et al., Defendants.

BERTHA LANDWER, Individually and as Administratrix of the Estate of HENRY LANDWER, Deceased, Appellant, *v.* CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Respondent, et al., Defendants.

First Department, December 19, 1968.

166

*Herman Schmertz* of counsel (*Gair & Gair*, attorneys for Lillian Braun and another; *Augustin J. San Filippo*, attorney for Bertha Landwer), for appellants.

*Joseph D. Ahearn* of counsel (*John M. Keegan*, attorney), for respondent.

EAGER, J. These actions were brought to recover damages for the alleged wrongful deaths of three workmen occurring as the result of an explosion in the power plant of the defendant Consolidated Edison Company (Con Ed). The jury, following a trial of the actions, rendered a verdict in favor of said defendant, and the plaintiffs appeal from the judgments entered upon such verdict.

The decedents, at the time of the accident, as employees of a subcontractor, were engaged in removing an existing manual lever or operating handle and interlock assembly located on the outside of the switch disconnection box of a substation on the ninth floor of the Con Ed building. The workmen intended to

substitute a lever and interlock assembly of a more suitable type. The lever and assembly were used to control the shaft which, when turned to an "on" position, connected the live cables with the contact blades in the box. The work entailed the removal of a plate in order to separate the interlock assembly from the switch box compartment. The plate was located on the outside of the box but the workmen were required to remove a set screw and four bolts holding the assembly and plate to the box. Although the switch box on the primary or intake-side was connected with a current of 13,800 volts at the time of the work, there was testimony that the outside of the switch box was completely safe to touch; that it was a "simple job"; that an oil seal, acting as a friction on the pivot of the shaft, would prevent free movement of the shaft from an "off" position; and that the work could be accomplished without activating any of the interior contents of the switch box and without danger to the workmen.

It was agreed that Con Ed should take two steps in preparation for the work, viz: (1) Open the circuit breaker on the secondary or outage side from the transformer to prevent the possibility of a power flow reversal from the low tension or 2,400 volt side of the transformer; and (2) open the interlock on the outside of the disconnect switch box, that is, to place it in an open or off position so that the current coming in to the substation would be cut off at the terminals in the box. It clearly appears that these preliminary steps were fully complied with prior to the entry by the decedents into the substation room.[1]

Con Ed further suggested that the cables entering the substation be de-energized for the purpose of the work by the decedents, but the supervisory engineer (not under direction or control of Con Ed)[2] and the subcontractor, with the acquiescence of the decedent Braun, deliberately chose to do the work without the cutting off of the current.

The decedents were the only persons present at the substation at the time of the accident. Although there is no eyewitness testimony as to what the decedents were actually doing at the time of the explosion, it may be inferred that they were then

1. This is not disputed. Indeed, plaintiffs argue their appeal on the basis of the "uncontradicted testimony that the interior electrical contact blades had been separated from the bushings on the pivot prior to the commencement of the decedents' assigned work (by the placement of the lever in an open position)".

2. The power plant, which had been owned by the City of New York, was transferred by it to Con Ed some months before the accident, subject to completion by the Transit Authority of the city of certain contracts for the improvement of the facilities of the plant; and the engineer supervising the work was acting in behalf of the Transit Authority under contract with the city.

working on the equipment. There is evidence that the work had progressed to the extent of a removal of the lever on the outside of the switch box, a removal of some of the bolts, and a loosening of the plate on the box. The cause of the explosion was not established but it appears that the explosion erupted in the switch box or in the pothead compartment located just below the switch box.

The plaintiffs tried the case on the theory of *res ipsa loquitur* and the issues of negligence and contributory negligence were submitted to the jury. The plaintiffs urge that it was error to submit the issue of contributory negligence to the jury and that, in any event, the verdict was clearly against the weight of the evidence. We conclude that these contentions lack merit and that the judgments entered on the verdict of the jury should be affirmed.

The evidence supports a finding that the decedents, who were experienced electricians, entered upon and engaged in the performance of the work on the lever and plate located on the switch box in the substation with the knowledge that an electric current of very high voltage was connected with and entering into the bushings and terminals in the box. The jury could find that the decedents voluntarily assumed an unnecessary risk in doing their work. This could constitute contributory negligence which, simply defined, '' is conduct which involves an undue risk of harm to the actor himself.'' (Prosser, Torts [3d ed.], § 64, p. 428.) '' [I]t is clear that where a person can choose between one of two courses to follow, one of which exposes him to danger and the other of which does not, he may be held guilty of contributory negligence if he chooses the dangerous course. In general, what constitutes knowledge and appreciation of the danger is a question of fact.'' (*Utica Mut. Ins. Co.* v. *Amsterdam Color Works,* 284 App. Div. 376, 379, affd. 308 N. Y. 816. See, also, *Seidman* v. *M & R Air Conditioning Corp.,* 15 N Y 2d 814; *Townes* v. *Park Motor Sales,* 7 A D 2d 109, 112–114, affd. 7 N Y 2d 767.)

There is no validity to the plaintiffs' point that it was improper in this case to submit the contributory negligence issue to the jury. The alleged contributory negligence of an injured or decedent, and the causal relationship thereof to the injury or death, are matters for consideration in every case submitted on the theory of *res ipsa loquitur*. '' Allied to the condition of exclusive control in the defendant [essential in a *res ipsa* case] is that of absence of any action on the part of the plaintiff contributing to the accident. Its purpose, of course, is to eliminate the possibility that it was the plaintiff who was responsible.'' (Prosser, Torts [3d ed.], § 39, p. 228; see, also, 4 Bender's New

York Evidence, § 230.07[1], p. 187; *Corcoran* v. *Banner Super Market,* 19 N Y 2d 425, 430; *Minotti* v. *State of New York,* 6 A D 2d 990.)

Generally, also, in a *res ipsa loquitur* case, the issues pertaining to the alleged contributory negligence of the injured or decedent present questions of fact. In such a case, it is the function of the jury to draw, weigh and resolve all such inferences as might be deduced by a reasonable mind from the proven facts and circumstances. (See *Witkowicz* v. *Amalgamated Props.,* 264 App. Div. 156, 160.) When varying inferences are present, a jury question is raised. (See *Foley* v. *State of New York,* 294 N. Y. 275, 280.) Therefore, where reasonable inferences would support a finding that the negligence of an injured or a decedent may have contributed to his injury or death, the issue of contributory negligence is properly submitted to the jury.

The right of Con Ed to have the jury in this case pass upon all reasonable inferences would have been defeated by a matter of law dismissal of the defense of contributory negligence. Such dismissal would amount to an unjustifiable matter of law holding that the decedents incurred no danger in working on the switch box without a de-energizing of cables. Furthermore, the dismissal would have constituted a factual determination that the explosion was caused not by acts of the decedents relating to danger incurred by them, but by events which occurred outside of the substation and which were under the control of Con Ed. Thus, the dismissal would have had the effect of invading the province of the jury in the matter of resolving the inferences bearing on the question as to the cause of the explosion.

As noted, the cause of the accident was not established and we do not know whether the explosion was triggered by events occurring in or outside of the substation. The plaintiffs did not prove and do not claim that the deaths of the decedents resulted from a particular negligent act or omission which would be unrelated to the danger voluntarily assumed by them. Also, it is not known with matter of law certainty that the decedents did not incur any risk in what they actually did under the conditions assumed by them. There being no proof as to what actually happened, the testimony that the proposed work did not involve any danger may not be given the effect of taking the issue of contributory negligence out of the case. Rather, such testimony would support an inference that if the decedents had performed their work properly, there would have been no danger and the explosion would not have occurred.

Under the circumstances, there is even arguable basis for Con Ed's contention that the record supports a holding that the

decedents were guilty of contributory negligence as a matter of law. In any event, if plaintiffs' case merited submission to the jury, the inferences bearing upon the contributory negligence of the decedents and the causal relationship thereof to their deaths, were properly submitted along with the inferences claimed to establish the negligence of Con Ed.

Nevertheless, we conclude that, irrespective of the defense of contributory negligence, the judgments are sustainable on the ground that there was no prima facie proof of actionable negligence on the part of Con Ed. The plaintiffs failed to establish a case on the theory of *res ipsa loquitur* and Con Ed's motion, made at the close of the case for a directed verdict, should have been granted.

It is settled, as hereinbefore noted, that, among the conditions necessary for the application of the doctrine of *res ipsa loquitur,* are the requirements that the accident " must be caused by an agency or instrumentality within the exclusive control of the defendant " and that the accident " must not have been due to any voluntary action or contribution on the part of the plaintiff." (*Corcoran* v. *Banner Super Market,* 19 N Y 2d 425, 430, *supra.*) Here, Con Ed was in control of the electric current which entered the substation but, at the time of the explosion, Con Ed was not in sole possession and control of the substation or of its components. There was no showing that the cause of the explosion was an improper flow or mishandling of the electric current, such as an overload or " a violent charge of electricity ", chargeable to Con Ed. (Cf. *Manley* v. *New York Tel. Co.,* 303 N. Y. 18, 25.) Inasmuch as there was no such showing, it is not reasonable to infer that Con Ed's negligence was the probable cause of the accident. (Cf. *Corcoran* v. *Banner Super Market, supra.*) If anything, it is a stronger inference that nothing would have happened if the defendants did their work properly.

The decedents were the only persons present at the time when they were working upon the equipment. For all that appears in the record, the explosion may have been occasioned by a short or arcing resulting from the activities of the decedents, including from an inadvertent loosening of the pivot of the shaft enabling a connection with the contact blades. Certainly, their responsibility for the accident was not eliminated.

This is a case where the probabilities point equally to a cause for which defendant is not responsible as they do to defendant's negligence. (See *Galbraith* v. *Busch,* 267 N. Y. 230.) The matter was " left in doubt and it is just as probable that the injury was the result of one cause [here, the acts of decedents] as the

other [negligence of Con Ed]." ["Therefore,] there can be no recovery" (*Ruback* v. *McCleary, Wallin & Crouse,* 220 N. Y. 188, 195). In fact, a finding that Con Ed was negligent rests on "mere speculation, guess or surmise [citing cases]. The defendant [Con Ed] is not an insurer (*Storm* v. *New York Tel. Co.,* 270 N. Y. 103), and the mere fact that an accident has happened and that injury followed does not give rise to a presumption of negligence on the part of the one charged [Con Ed]" (*Manley* v. *New York Tel. Co., supra,* p. 25).

The happening of the second explosion, following the accident (the first explosion) does not tend to establish negligence charging Con Ed with responsibility for the first explosion. Concededly, the second explosion resulted from Con Ed's inadvertent application of power after it became aware of the damage resulting from the first explosion. The power, so applied, caused the second explosion when it entered the circuits where a "short" existed due to the damage. The explanation of the cause of the second explosion negates the existence of any relationship with the cause of or alleged negligence in the unexplained initial explosion.

Finally, if the plaintiffs did establish a prima facie case on the theory of *res ipsa loquitur,* the jury has resolved the pertinent issues in Con Ed's favor. Although Con Ed did rest on the close of plaintiffs' case, there was a probing into the cause and the alleged responsibility for the accident in the examination and cross-examination of Con Ed's former electrical power supervisor who, at the time of the accident, was in charge of the operation of the plant equipment in the particular building. Also, there was received the testimony of Con Ed's general superintendent of the building and of the manager for the engineer supervising the improvement work in the plant. Con Ed was not bound to produce other witnesses in rebuttal of plaintiffs' alleged case. (See *Davis* v. *Goldsmith,* 19 A D 2d 514.) "[S]trictly speaking, res ipsa loquitur is an evidentiary rule which merely permits an inference of negligence and satisfies the plaintiff's duty of producing evidence sufficient to go to the jury, but does not create a full presumption and is ordinarily not sufficient, even where the defendant produces no evidence in contradiction or rebuttal, to entitle the plaintiff to the direction of a verdict." (41 N. Y. Jur., Negligence, § 89.) The court is not entitled to hold "that the jury had no reasonable recourse except to find in favor of plaintiff" (*Lo Piccolo* v. *Knight of Rest Prods. Corp.,* 7 A D 2d 369, 375, affd. 9 N Y 2d 662).

The jury was not bound to accept as true and unexplained the excerpts of testimony favorable to plaintiffs, that have now been

culled from the record by the dissenting Justice. The case was to be decided on the record as a whole. " It is settled [by a long line of cases] that a jury verdict in favor of defendant may not be set aside unless it plainly appears that the evidence so preponderates in favor of the plaintiff that the verdict for the defendant could not have been reached on any fair interpretation of the evidence." (*Marton* v. *McCasland*, 16 A D 2d 781, 782, citing cases. See, also, *Smith* v. *McIntyre*, 20 A D 2d 711, citing cases; *Carino* v. *Marino*, 28 A D 2d 514.)

We affirm the findings of fact implicit in the jury's verdict. The judgments for the defendant Consolidated Edison Company should be affirmed, without costs and disbursements.

CAPOZZOLI, J. (dissenting). There is no disagreement with the general proposition of law, as stated in the majority opinion, that contributory negligence is a defense in a case submitted on the theory of *res ipsa loquitur*. This dissent is based on the fact that nowhere in the record is there any evidence which would justify the defense of contributory negligence. There is not one shred of evidence tending to show that something was done by the decedents which contributed to the explosion resulting in their deaths.

The majority agrees that the cause of the accident was not established and it is not known what triggered the explosion. That being so, how can it be argued that something which the decedents did contributed to the occurrence? If this were the fact, certainly the defendant should be in a position to point to the specific actions of the decedents which brought about, or contributed to bringing about, this tragic result. This is especially so when we keep in mind that, in a death action, the defendant has the burden not only of alleging the contributory negligence of the decedent, but, also, to prove it. One searches in vain throughout this entire record for any proof whatever which would reasonably justify a finding of contributory negligence.

The attempt of the defendant to spell out such contributory negligence from the fact that, on some occasion prior to the date of the accident, the supervisor of the decedents and representatives of the defendant had agreed to have the work performed while the current was still on, is far-fetched. As against this claim, let us examine the testimony of the witness, Alfred W. Sacco.

This witness was employed by the defendant as the supervisor of electrical power and he was responsible for " the maintenance and operation of the electric end of the 74th Street plant ". (p. 129 of record.) He had been in this very same position since

August 1, 1959, at which time the defendant took over the plant from the City of New York. In fact, the witness, Sacco, had been employed by the city in the same capacity since 1954.

Sacco was called by the plaintiffs as a witness in their behalf and, at page 399 of the trial record, we find the following:

"Q. The question I then put to you, did you have any reservations in your mind as to whether or not it was completely safe for the men to do this job with the power on? A. I had no reservations.

" Q. Would you have gone to that box yourself as an electrician, and done the work on that box with the power on? A. Yes.

" Q. You would have? A. Yes."

One can well understand this testimony of Sacco when we consider that the decedents' work involved only the outside of the switch-box and they had nothing to do with the interior contents of that box. In this connection this same witness, Sacco, testified that, when the handle and the plate were taken off, the switch on the inside could not move. At pages 384–385, on cross-examination, the witness was asked:

" Q. * * * Now, when you took this handle off, this inside switch was left on its bearing, and whether it moved one way or another was a matter of chance at that time? A. No, it was not.

" Q. It couldn't move? A. No.

" Q. When you took the plate off, it could not move? A. No, sir, could not move.

" Q. When you took the handle out, was that handle resting upon some pivot on the inside? A. Yes, it was. * * *

" Q. Was that pivot a free agent? A. No."

At pages 387–388:

" Q. Was there some contact annexed to that transformer to which the power was communicated? A. Not at the time the men were working. * * *

" Q. And if as a result of the removal of that handle, these points that contained the power — whether we call them contacts or whether we call them something else — if they came in contact with some metal, they could cause a short, couldn't they? * * * A. Physically it would be impossible to make contact with ground with that switch. That is my feeling; that is my opinion."

Further evidence that the removal of the lever by decedents could not have activated the interior of the switch box was the testimony of Mr. Sacco, that the interior electrical contact plates had been separated from the bushing on the pivot before the decedents started their work. This was accomplished by placing the lever in an open position and, even after the explosion

occurred, these contact plates were found in the same separated position. This was corroborated by the examination before trial of David M. Bradt, a portion of which was read into the record at the trial, page 124: "I know that there was no power flowing through the switch, that the switch was open, to back this up, the main breaker on the low side was out of position, so that no power could go through."

It is clear that all of the work of the decedents was to be accomplished from the outside of the switch box with no need for getting inside of it and, therefore, it was completely safe. At page 144 defendant's supervisor, Sacco, testified: "well, this whole compartment and handle is on ground potential and it's as safe to touch as anything is safe in this room."

In the case of *Hinds* v. *Wheadon* (19 Cal. 2d 458, 461, 462), which involved the explosion of a tank, in rejecting the contention of the defendants that they were not in exclusive control at the time of the explosion, the court said (pp. 461–462): "The work done by deceased on the outside of the tank had no relation whatever to the complicated system of valves and pipes which regulated the water level within the tank and, insofar as the matter can be determined upon the evidence introduced by plaintiffs, such matters were within the exclusive control of the defendants."

Accordingly, in the case at bar, the defendant did not lose control of the equipment simply because the decedents were doing some work on the outside of it, having no connection with the flow of electric current on the inside. (See *Kane* v. *Ten Eyck Co.* 10 Misc 2d 398, affd. 267 App. Div. 789, affd. 292 N. Y. 701.)

The reasoning of the defendant seems to be that, since the injured party was doing some work on the outside of the switch box and despite the absence of any proof that this work had any causal relation with the explosion, the rule of *res ipsa loquitur* cannot be applied because the defendant, under the circumstances disclosed, did not have exclusive control. This is not the law. (*Jesionowski* v. *Boston & Maine R. R. Co.*, 329 U. S. 452.) At page 457 of the last cited case, in discussing a similar argument advanced by the defendant in that case, the court said: "We cannot agree. *Res ipsa loquitur*, thus applied, would bar juries from drawing an inference of negligence on account of unusual accidents in all operations where the injured person had himself participated in the operations, even though it was proved that his operations of the things under his control did not cause the accident."

There can be no doubt that, under the law, the defendant owed to the decedents the duty of exercising reasonable care to

see to it that the place of their work was made safe from the electrical hazards which could flow from the operation of defendant's power equipment. In order to protect the decedents against these hazards the defendant, through its employees, particularly the witness, Sacco, and Mr. Kane, the latter described as the access and protection man, gave assurances that it would open the switch box, it would open the circuit-breaker attached to the substation A-1-1 transformer and also open the tie-breaker connecting the A-1-1 to A-1-2.

The evidence clearly shows that the electric current in this plant was controlled from a so-called control room which was under the direction of Sacco and his staff. No one can really believe that the current was within the control of the three decedents. They had nothing at all to do with the electrical current. They had a right to assume that the defendant would so control its current as not to endanger them while they were working.

The witness, Sacco, testified that, on the Friday preceding the Monday when the accident occurred, he had executed a work-sheet and he '' gave it to the operating department, and they were to follow through *to provide the protection for the men to work on that equipment.* That's how the procedure usually worked.'' (Emphasis supplied.) (p. 187.) Again, on the same page, we find the following:

'' Q. On Monday, when the men came, so far as the lock part of the handle was concerned on the A-1-1 station, was it or was it not in a locked position? * * * A. I really can't say.''

And, when the witness was pressed, at page 189, he said: '' I don't know what position it was, but I'll assume it was.''

Again, at page 191: '' The Court: Weren't you to see that everything was done properly? Wasn't that part of your duties? The Witness: But I don't make the inspection. I don't do the work.'' It seems to me that someone should have known what was done to the equipment involved in this case before the three decedents were allowed to work on it. The defendant was '' to provide the protection for the men to work on that equipment ''. Why did it not adduce evidence to show what was done in providing that protection? Since Sacco did not do the work necessary to protect the decedents, who did? Why did the defendant fail to produce them, so that the extent of the protection given to the decedents could have been evaluated by the jury? But the defendant called no witnesses and rested at the end of plaintiffs' case.

In a death case it is settled that the plaintiff is not held to the high degree of proof required in a case where the injured person

may take the stand and give his version of the happening of the accident (*Noseworthy* v. *City of New York*, 298 N. Y. 76). Accordingly, it was incumbent upon the defendant to give its version of the accident.

In *Noce* v. *Kaufman* (2 N Y 2d 347, 353) the court said: '' Where an adversary withholds evidence in his possession or control that would be likely to support his version of the case, the strongest inferences may be drawn against him which the opposing evidence in the record permits ''.

This is not a case where the deceased workmen were called in to repair a defect in the flow of electric current or where the work itself created the danger. Their work had nothing to do with the electric current. The current was at all times within the control of the defendant, through its supervisor, Sacco, and his staff. This is best shown by the fact that, after the decedents were removed from the premises following their fatal injuries, a second explosion occurred at the place where they had been working and this is conceded by the defendant to have been due to its own fault. It calls it an '' operating error ''. From all the evidence in the record, the conclusion is irresistible that the earlier fatal explosion was as much the fault of the defendant, or '' operating error '', as was the second.

For the above reasons I believe that the trial court erred in submitting the question of contributory negligence to the jury. It should have decided as a matter of law that there was no contributory negligence shown by the defendant and the motion of the plaintiffs to dismiss this affirmative defense should have been granted. (*Callahan* v. *Syracuse Tr. Corp.*, 16 A D 2d 746; *Perry* v. *Dosch-King Co.*, 267 App. Div. 350.)

In the case of *Callahan* v. *Syracuse Tr. Corp.* (*supra*) the court said: '' There was no evidence from which contributory negligence could have been found and it was error for the court to submit that question to the jury. The jury, in an endeavor to follow the charge of the court, may have concluded that the negligence of the plaintiff contributed in some manner to the accident, and based the verdict on that conclusion.''

Further, on this record, with contributory negligence out of the case, I believe that the evidence so preponderates in favor of the plaintiffs that the jury's verdict for the defendant could not have been reached on any fair interpretation of the evidence.

I vote to reverse and grant a new trial.

Stevens, J. P., and Rabin, J., concur with Eager, J.; Capozzoli, J., dissents in opinion.

Judgments affirmed without costs or disbursements.